IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

**DAVID DEAN BUZZARD, JR.,**

      **Movant,**

v.

      **Case No. 2:21-cv-00292**
      **Criminal Case Nos. 3:08-cr-00014**
                            **2:13-cr-00005**

**UNITED STATES OF AMERICA,**

      **Respondent.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

Pending before the Court are Movant's *pro se* Motion and Amended Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 and Motion Seeking a Hearing. (ECF Nos. 47, 54, 72). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and has been referred by Standing Order to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, the undersigned respectfully **RECOMMENDS** that Movant's motions be **DENIED,** and this matter be **DISMISSED**, with prejudice, and removed from the docket of the Court. As the undersigned conclusively **FINDS** that Movant is not entitled to the relief requested, an evidentiary hearing is not warranted. *Raines v. United States,* 423 F.2d 526, 529 (4th Cir. 1970).

**I.  Factual and Procedural Background**

On February 11, 2008, Movant David Dean Buzzard, Jr. ("Buzzard") pleaded guilty

1

to conspiracy to commit offenses against the United States, including interstate transportation of a stolen vehicle, in violation of 18 U.S.C. § 2312. *United States v. Buzzard*, No. 3:08-cr-00014 (S.D.W. Va. Feb. 11, 2008) (hereinafter "*Buzzard I*"), ECF Nos. 26, 29 through 32. While awaiting sentencing on the conspiracy charge, Buzzard attempted to escape from the Boyd County Detention Center, which is located within the judicial district of the United States District Court for the Eastern District of Kentucky ("Eastern District of Kentucky"). *United States v. Buzzard*, No. 2:13-cr-00005 (S.D.W. Va. Jan. 7, 2013) (hereinafter "*Buzzard II*"), ECF No. 1 at 2-6; *Buzzard I*, ECF No. 118 at 6. Buzzard was subsequently indicted in the Eastern District of Kentucky on several counts related to his attempted escape and ultimately pled guilty to one count of attempted escape in violation of 18 U.S.C. § 751(a). *Buzzard II,* ECF No. 1 at 2-6.

On May 28, 2008, Buzzard was sentenced by this Court to 60 months of imprisonment followed by three years of supervised release on the conspiracy conviction. *Buzzard I*, ECF No. 41. This sentence included a two-level increase of the base offense level under the United States Sentencing Guidelines ("USSG") to account for Buzzard's attempted escape, as well as a denial of the decrease for acceptance of responsibility, which together enhanced Buzzard's USSG sentence range by approximately twelve months. *Buzzard I*, ECF No. 57 at 71. On February 11, 2009, the Eastern District of Kentucky sentenced Buzzard on the escape conviction to 21 months of imprisonment, followed by three years of supervised release, with the sentence to run concurrently to the sentence imposed in *Buzzard I* and to any other undischarged state or federal sentence. *Buzzard II*, ECF No. 1 at 6-8.

In early 2013, after Buzzard's discharge from incarceration, jurisdiction of his supervised release for attempted escape was transferred from the Eastern District of

Kentucky to this Court. *Buzzard II,* ECF No. 1. In August 2013, this Court found that Buzzard had violated the terms of his supervised release in both his conspiracy and attempted escape cases. *Buzzard I*, ECF No. 92; *Buzzard II,* ECF No. 29. The Court revoked Buzzard's supervised release and ordered him to serve 24 months in prison on the conspiracy conviction, followed by a separate sentence of 12 months on the attempted escape conviction. *Id.* The Court did not impose any additional terms of supervised release. Buzzard did not appeal his supervised release revocation sentences. However, in May 2021, Buzzard filed the instant § 2255 motion and amended motion, arguing that the Court's sentences violated the double jeopardy and due process provisions of the Fifth and Fourteenth Amendments to the United States Constitution, respectively. (ECF Nos. 47, 54). Buzzard claims that the Court should have ordered his supervised release revocation sentences to run concurrently rather than consecutively. (*Id.*).

On the same day, the Court ordered the United States to respond to the § 2255 motion. The Government filed a timely response in which it argues that Buzzard's motion should be denied, because he procedurally defaulted his claims by failing to timely appeal his revocation sentences. (ECF No. 66 at 3-4). The Government points out that Buzzard was advised during his revocation hearing in August 2013 that he had fourteen days to file a notice of appeal, or he would lose the right to appeal his sentences. (*Id.* at 4). The Government further contends that Buzzard cannot show cause or actual prejudice to excuse his procedural default, and he cannot claim actual innocence as he admitted his violation conduct during his hearing. (*Id.*). Finally, the Government asserts that Buzzard's claims fail on the merits, even if they were not procedurally defaulted. (*Id.* at 5). The Government explains that a supervised release revocation sentence is not a new punishment, but is instead part of the original sentence. (*Id.*). Thus, the consecutive

3

sentences imposed by the Court did not violate the due process or double jeopardy clauses of the Constitution. (ECF No. 66 at 5). According to the Government, nothing prohibited the Court from ordering the supervised release revocation sentences to run consecutively. (*Id.* at 6).

In a reply memorandum, Buzzard maintains that the Court violated the prohibition against double jeopardy by punishing him multiple times for the same attempted escape. Buzzard emphasizes that this offense was used as a basis to enhance his sentence for the conspiracy conviction, to deny him a reduction for acceptance of responsibility, and to impose consecutive terms of imprisonment on the revocation sentences. (ECF No. 68 at 1-3). Regarding procedural default, Buzzard argues that his attorney, George Lancaster, said that he was going to appeal the consecutive 12-month sentence that Buzzard now challenges, but did not do so. (*Id.* at 4). Therefore, Buzzard argues, if the claim is defaulted, that default was caused by ineffective assistance of counsel. (*Id.*).

In September 2021, Buzzard filed a motion seeking a hearing. (ECF No. 72). He states that there are discrepancies in the record concerning when the Eastern District of Kentucky transferred jurisdiction of his supervised release to this Court. (*Id.* at 1-2). Specifically, Buzzard argues that this Court purported to receive jurisdiction on January 7, 2013, but the Eastern District of Kentucky did not enter the order transferring jurisdiction until January 17, 2013. (*Id.* at 2-3). Buzzard states that the discrepancy supports a possible ineffective assistance of counsel claim and may "question the validity" of the consecutive 12-month sentence "even further." (*Id.* at 3).

## II. **Standard of Review**

A motion made pursuant to 28 U.S.C. § 2255 is a collateral attack on a conviction or sentence that was entered in a separate proceeding. To succeed on such a motion,

4

Buzzard must prove that the conviction or sentence was imposed in violation of the laws or Constitution of the United States; the court imposing the sentence lacked jurisdiction; the sentence exceeded the maximum authorized by law; or the sentence was otherwise subject to collateral attack. 28 U.S.C. § 2255. A motion collaterally attacking a prisoner's conviction or sentence brought pursuant to § 2255 requires Buzzard to establish his or her grounds by a preponderance of the evidence. *Sutton v. United States of America,* No. 2:02-cr-00065, 2006 WL 36859, at *2 (E.D. Va. Jan. 4, 2006).

### III. Discussion

Buzzard challenges the Court's decision to order consecutive rather than concurrent sentences upon revoking his supervised release. However, Buzzard is not entitled to relief for the following reasons.

#### A. Procedural Default

The Government argues that Buzzard's claims are procedurally defaulted because he did not appeal his revocation sentences to the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit"). As a general rule, claims of error that could have been raised on direct appeal, but were not, may not be raised on collateral review unless the petitioner shows cause and prejudice or actual innocence of the offense. *Massaro v. United States*, 538 U.S. 500, 504 (2003); *Bousley v. United States,* 523 U.S. 614, 622 (1998). "The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." *United States v. Pettiford*, 612 F.3d 270, 280 (4th Cir. 2010) (quoting *United States v. Mikalajunas*, 186 F.3d 490, 493 (4th Cir. 1999)) (internal marks omitted). In addition, Buzzard must show more than simply a possibility of prejudice; instead, he must show that an error occurred which caused an "actual and substantial disadvantage"

5

tainting the entire proceeding with an "error of constitutional dimensions." *United States v. Frady,* 456 U.S. 152, 170 (1982). "The procedural-default rule is neither a statutory nor a constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro*, 538 U.S. at 504. The burden to overcome procedural default rests with Buzzard as he is the person attacking his sentence. *United States v. Fugit,* 703 F.3d 248, 253 (4th Cir. 2012).

There is no doubt that Buzzard's claims are procedurally defaulted. Buzzard argues, however, that the claims should be excused from procedural default because Mr. Lancaster agreed to file an appeal, but did not follow through; therefore, the default was the result of ineffective assistance of counsel. (ECF No. 68 at 4). As indicated, a claim of ineffective assistance of counsel may constitute cause to excuse procedural default if the claim has merit. *Murray v. Carrier*, 477 U.S. 478 (1986). The failure of a defense attorney to appeal a criminal judgment, after being clearly instructed to do so by his client, constitutes *per se* ineffective assistance of counsel. *Hunter v. United States*, No. 1:21-cv-00168-MR, 2021 WL 4301388, at *1 (W.D.N.C. Sept. 21, 2021) (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000)). In addition, prejudice is presumed to flow from an attorney's failure to lodge a requested appeal. *Id*. (citing *United States v. Poindexter,* 492 F.3d 263, 269 (4th Cir. 2007).

Upon close examination of Buzzard's argument, the undersigned notes that Buzzard does not claim to have instructed Mr. Lancaster to file an appeal. Instead, he asserts the following: "As Movant recalls, Mr. Lancaster stated that he was going to file an appeal on behalf of Movant, based on the consecutive 12 month sentence." (ECF No. 68 at 4). This recollection describes nothing more than an unsolicited intention conveyed

6

by Mr. Lancaster to Buzzard; not a clear instruction, or even a request, by Buzzard to Mr. Lancaster asking that he file an appeal. In addition, other parts of the record undermine Buzzard's recollection regarding an appeal.

During the revocation hearing, the Court advised Buzzard that he had fourteen days to file a Notice of Appeal in the Fourth Circuit, and if he failed to do so, he would lose his right to appeal. *Buzzard I*, ECF No. 125 at 15; *Buzzard II,* ECF No. 61 at 15. Buzzard was also told that the Government would bear the expense of providing Buzzard with a lawyer if he could not afford one. *Id.* Buzzard acknowledged his understanding of the Court's statements. Indeed, Buzzard was familiar with the appeal process, having filed his own Notice of Appeal in his criminal conspiracy case. *See Buzzard I,* ECF No. 45. In that case, Buzzard initiated *pro se* appellate proceedings in the Fourth Circuit upon learning that his lawyer had neglected to do so. *Id.* It stands to reason that Buzzard, having had that prior experience, would have either checked with Mr. Lancaster to confirm the submission of a Notice of Appeal, or would have filed his own Notice of Appeal as he had done in the past. The record is devoid of evidence demonstrating that Buzzard took any steps to ensure that an appeal was filed. Furthermore, there is no evidence that Buzzard had any subsequent discussion with his lawyer regarding an appeal, despite having contact with Mr. Lancaster.

Buzzard indicates that in July 2015, he wrote to Mr. Lancaster about an unrelated matter and later spoke with him by telephone. Yet, Buzzard never inquired about the status of his appeal. If Buzzard believed that an appeal had been filed, it defies logic that he would contact Mr. Lancaster, speak directly with him, but ask no questions about the status of his appeal. Moreover, Buzzard never communicated with the Court about the outcome of his alleged appeal. The absence of inquiry by Buzzard is particularly

7

mystifying in view of the considerable contact Buzzard had with the Court during the years after his revocation sentences were imposed. It is also noteworthy that Buzzard never raised an ineffective assistance of counsel claim based upon Mr. Lancaster's failure to file an appeal, even though Buzzard filed a § 2255 motion, an amended § 2255 motion, and § 3582 motion asking the Court to reconsider running his revocation sentences concurrently. (ECF Nos. 47, 54); *Buzzard I,* ECF No. 98. Notwithstanding all of the opportunities Buzzard had to raise the issue of his alleged appeal, the first time he ever mentioned an appeal was in his reply brief when he attempted to provide an excuse for procedural default.

Taking the record as a whole, Buzzard does not make a persuasive showing of cause and prejudice, and he makes no argument that he is innocent of the supervised release violations. As the Government noted, Buzzard's statements during his revocation hearing, in which he admitted his conduct, eliminates any claim that he is actually innocent of violating the terms of supervised release. *Buzzard I,* ECF No. 125; *Buzzard II,* ECF No. 61. Therefore, the undersigned **FINDS** that Buzzard has not carried his burden to establish cause and prejudice or actual innocence necessary to excuse procedural default.

### B.  *Failure to State a Claim*

Had Buzzard not procedurally defaulted his claims, however, he still would not be entitled to relief because his claims have no merit. Although he contends that he was punished multiple times for the same attempted escape offense, "the Supreme Court has historically found double jeopardy protections inapplicable to sentencing proceedings and has refused to construe sentence enhancements as additional punishments." *United States v. Fitzgerald,* 435 F.3d 484, 487 (4th Cir. 2006) (citing *Monge v. California,* 524

8

U.S. 721, 728 (1998)) (markings omitted). As such, the fact that the same offense served as the basis for an enhanced sentence in one case and a separate criminal charge in another case did not violate Buzzard's constitutional right to be free of double jeopardy. Similarly, Buzzard was not subjected to double jeopardy when he received separate sentences for violating two distinct terms of supervised release. "The primary thrust of the Double Jeopardy Clause is to protect a defendant from multiple punishments or successive prosecutions for the same offense." *United States v. Silvers,* 90 F.3d 95, 99 (4th Cir. 1996) (citation omitted). Buzzard was not punished for the same offense with his revocation sentences. To the contrary, he was punished for violating the terms and conditions of supervised release imposed on a conviction of conspiracy, and for violating the terms and conditions of supervised release imposed on an attempted escape charge. Although the behavior giving rise to the violations and culminating in the revocation sentences was the same, Buzzard was not punished for the same offense. *See United States v. Richardson,* 269 Fed. Appx. 493, 494-95 (5th Cir. 2008) (holding that the double jeopardy provisions of the Fifth Amendment generally do not apply to supervised release revocations); *also United States v. Dees*, 467 F.3d 847, 853 (3rd Cir. 2006) (holding that the Double Jeopardy Clause was not violated when the district court revoked the defendant's three concurrent terms of supervised release based on the same conduct and required him to serve three consecutive terms in prison); *Williams v. Clarke*, No. 3:11CV822, 2013 WL 101537, at *4 (E.D. Va. Jan. 8, 2013) (noting that probation revocations in two jurisdictions did not implicate double jeopardy).

Buzzard also focuses on the fact that the Eastern District of Kentucky ordered his attempted escape sentence be served concurrently with his conspiracy sentence, arguing that the corresponding revocation sentences should also have run concurrently given that

they were components of the original sentences. *See, e.g., United States v. Venable*, 943 F.3d 187, 193–94 (4th Cir. 2019) (citing *United States v. Evans*, 159 F.3d 908, 913 (4th Cir. 1998) ("[T]he term of supervised release, the revocation of that term, and any additional term of imprisonment imposed for violating the terms of supervised release are all part of the original sentence.") and *United States v. Woodrup*, 86 F.3d 359, 361 (4th Cir. 1996) ("The sentence imposed upon revocation of a term of supervised release is an authorized part of the original sentence, just as the term of supervised release is an authorized part of the original sentence[.]")). However, the Court acted well within its discretion to order the supervised release revocation sentences to be served consecutively. As the Court explained to Buzzard, he admittedly violated the terms of his supervised release, and thereby breached the trust, of two separate courts on two separate offenses. Consequently, consecutive terms of imprisonment were appropriate. *See, e.g., United States v. Padgett*, 788 F.3d 370, 372–73 (4th Cir. 2015) (affirming consecutive sentences of imprisonment for violating terms and conditions of two concurrent terms of supervised release). For these reasons, the undersigned **FINDS** that Buzzard fails to state meritorious claims under § 2255.

### C. Timeliness

Although the Government has not addressed the timeliness of Buzzard's motion, the motion was filed in May 2021, well after expiration of the applicable one-year limitations period. Buzzard provides an explanation for his late submission, indicating that he was not able to file the motion, because he was in the custody of the State of West Virginia. (ECF No. 54 at 13). Buzzard asserts that immediately after his revocation sentences were imposed, he was returned to the West Virginia Division of Corrections to

complete an undischarged state sentence and was not delivered into federal custody until October 2020. (*Id.*).

"Ordinarily in civil litigation, a statutory time limitation is forfeited if not raised in a defendant's answer or in an amendment thereto." *Wood v. Milyard*, 566 U.S. 463, 470 (2012) (quoting *Day v. McDonough,* 547 U.S. 198, 202 (2006)). However, in *Day,* the Supreme Court of the United States ("Supreme Court") held "that district courts are permitted, but not obliged, to consider, *sua sponte,* the timeliness of a … prisoner's habeas petition." 547 U.S. at 209. The Court later clarified this holding in *Wood,* explaining that a district court may, on its own initiative, consider timeliness in a collateral proceeding when the Government does not "strategically withhold the limitations defense or choose to relinquish it, and where the petitioner is accorded a fair opportunity to present his position." 566 U.S. at 472 (citations and internal markings omitted). As the Government did not deliberatively waive the limitations defense in this case, and Buzzard has had an opportunity to explain the filing delay, the undersigned considers the timeliness of Buzzard's § 2255 motion.

Under the Anti–Terrorism and Effective Death Penalty Act of 1996 (hereinafter the "AEDPA"), a § 2255 motion must be filed within one year of the latest of the following dates:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Buzzard does not assert any facts or argument to suggest that subsections two through four of § 2255(f) apply to his claim. Therefore, Buzzard was required to file his § 2255 motion within one year of the date that his revocation sentences became final, as provided in § 2255(f)(1). "Under 28 U.S.C. § 2255(f)(1), a revocation of supervised release becomes final upon the expiration of the time to seek direct review." *United States v. Loiseau*, No. 3:97CR344, 2018 WL 2124092, at *2 (E.D. Va. May 8, 2018) (citing *Clay v. United States*, 537 U.S. 522, 527–28 (2003); *United States v. Moxley*, No. 3:99CR285–HEH, 2017 WL 5195870, at *1–2 (E.D. Va. Nov. 9, 2017); and *Villa–Benitez v. United States*, No. 3:06–CR–442–RJC–1, 2015 WL 8485268, at *2 (W.D.N.C. Dec. 8, 2015) (concluding habeas petitioner's conviction became final when time expired to seek direct review of the Court's order revoking his supervised release and sentencing him to time in prison)).

Buzzard's revocation sentences were imposed on August 7, 2013. *Buzzard I*, ECF No. 92; *Buzzard II,* ECF No. 29. Buzzard did not appeal the sentences; accordingly, they became final in late August 2013, and he had one year, or until August 2014, to challenge them under the AEDPA. Buzzard did not file a motion to vacate, set aside, or correct his sentence until May 2021, nearly seven years later. Therefore, his motion is very clearly time-barred.

The Fourth Circuit has long recognized that the AEDPA's statute of limitations can be tolled in "rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitations period against the party

and gross injustice would result." *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000). The Supreme Court established in *Holland v. Fla.* that equitable tolling should only be extended when a habeas petitioner demonstrates "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." 560 U.S. 631, 649 (2010). A district court should not *sua sponte* dismiss a § 2255 motion without affording the movant an opportunity to explain why the statute of limitations should be equitably tolled so that he may proceed on the merits, unless it is "indisputably clear from the materials presented to the district court that the petition is untimely and cannot be salvaged by equitable tolling principles." *Hill v. Braxton*, 277 F.3d 701, 707 (4th Cir. 2002).

As stated, Buzzard was given an opportunity to explain why his motion should be considered timely. Buzzard provides a rationale, but it simply does not establish a basis for equitable tolling. Buzzard does not demonstrate reasonable diligence in the pursuit of his post-conviction remedies, and he fails to show extraordinary circumstances that hindered his ability to proceed with those remedies. Buzzard contends that his imprisonment by the State of West Virgnia prevented him from filing a § 2255 motion. However, the record before the Court belies that contention. While serving his state sentence, Buzzard filed four *pro se* federal civil rights actions, a § 3582 motion in this Court for reconsideration of his sentences, and two petitions for a writ of mandamus in the Fourth Circuit. *See Buzzard v. Robbins,* No. 3:14-cv-25533 (S.D.W. Va. Sept. 8, 2014); *Buzzard v. Rubenstein,* No. 5:15-cv-00162 (N.D.W. Va. Dec. 11, 2015); *Buzzard v. Jividen,* No. 2:18-cv-0548 (S.D.W. Va. Apr. 9, 2018); *Buzzard v. Jividen,* No. 3:18-cv-00062 (N.D.W. Va. Apr. 30, 2018); *Buzzard II,* ECF No. 36; *In Re David Buzzard,* No. 19-1543 (4th Cir. May 21, 2019); *In Re David Buzzard,* No. 19-1735 (4th Cir. Jul. 12, 2019). These

13

were not simply single page documents either. For example, the complaint in his first § 1983 action—which was filed in this Court shortly after expiration of his deadline to file a § 2255 motion—was, with exhibits, 95 pages long. *See Robbins,* No. 3:14-cv-25533. Buzzard fully litigated the case, filing voluminous discovery requests, briefs, and motions during the nearly two and one half years the suit was pending. *Id.* Throughout that entire time period, Buzzard was an incarcerated state prisoner. As Buzzard clearly was able to initiate and litigate multiple federal lawsuits during his state incarceration, he has no legitimate excuse for failing to timely file his § 2255 motion.

In any event, courts in this circuit have found that incarceration in a state correctional facility generally does not provide a basis for equitable tolling. *See United States v. Giles*, No. 5:14-CR-00052, 2021 WL 5416608, at *3 (W.D. Va. Nov. 19, 2021) ("Courts have 'uniformly held' that petitioners in state custody 'may nevertheless challenge [a] federal sentence and thus are subject to the § 2255 statute of limitations.'") (quoting *Perry v. Warden Fort Dix FCI,* 609 Fed. Appx. 725, 727 (3rd Cir. 2015) and *Ospina v. United States,* 386 F.3d 750, 752 (6th Cir. 2004)); *United States v. Barbour*, No. 7:10CR00069-1, 2020 WL 2090676, at *3 (W.D. Va. Apr. 30, 2020) (holding that state incarceration, even without access to federal materials, is not an extraordinary circumstance warranting equitable tolling); *United States v. Wood*, No. 8:12-709-HMH, 2014 WL 11513145, at *1 (D.S.C. Oct. 3, 2014), *dismissed,* 594 Fed. Appx. 171 (4th Cir. 2015) (finding that placement in state custody does not amount to "extraordinary circumstances' necessary to justify equitable tolling); *United States v. Ricks*, No. 1:11CR105 JCC, 2013 WL 1790145, at *4 (E.D. Va. Apr. 25, 2013) (holding that state prisoner's limited access to federal books, research, notes, and a computer database amounted to "no more than 'the difficulties inherent in prison life' and 'ordinary

hardships of a *pro se* inmate filing for collateral relief,' which courts in this district have found to be insufficient to demonstrate equitable tolling.") (citations omitted); *Allred v. United States*, No. 1:08CV56, 2008 WL 11512301, at *3 (M.D.N.C. July 10, 2008), *report and recommendation adopted,* No. 1:08CV56, 2009 WL 10731013 (M.D.N.C. June 10, 2009) (stating that incarceration in state prison with no access to federal legal materials "might have made Petitioner's task in filing more difficult, [but] it does not entitle him to equitable tolling."). Therefore, this is not one of the rare instances in which equitable tolling applies. For those reasons, the undersigned **FINDS** that Buzzard's motion under § 2255 is untimely pursuant to the AEDPA.

### D. *Motion for Hearing*

Buzzard requests a hearing in this matter because of supposed discrepancies in the record concerning when the Eastern District of Kentucky transferred jurisdiction of his supervised release for his attempted escape conviction to this Court. (ECF No. 72). Regardless of when the transfer order was entered, it very clearly was entered prior to the revocation of Buzzard's supervised release in August 2013. *Buzzard II*, ECF No. 29. Therefore, to the extent that Buzzard argues that the Court was without jurisdiction to revoke his supervise release and impose a revocation sentence, that contention lacks merit. As Buzzard shows no reason for an evidentiary hearing, the undersigned **FINDS** that an evidentiary hearing is unnecessary.

### IV. <u>Proposal and Recommendations</u>

The undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the Motion and Amended Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 and Motion Seeking a Hearing, (ECF Nos. 47, 54, 72), be **DENIED,**

and that this action be **DISMISSED,** with prejudice, and removed from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Chambers, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Buzzard and counsel of record.

**FILED:** March 1, 2022

Cheryl A. Eifert
United States Magistrate Judge